# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**GERALD D. JACKSON**

**CIVIL ACTION**

**VERSUS**

**NO. 16-479-JJB-RLB**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY**

## <u>NOTICE</u>

Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the proposed findings of fact and conclusions of law in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE**
**WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on August 2, 2017.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**GERALD D. JACKSON**

**VERSUS**

**MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY**

**CIVIL ACTION**

**NO. 16-479-JJB-RLB**

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Gerald D. Jackson (Plaintiff) seeks judicial review of a final decision of the

Commissioner of the Social Security Administration ("Commissioner") pursuant to 42 U.S.C. §

405(g) denying Plaintiff's application for Disability Insurance Benefits under the Social Security

Act. (R. Doc. 1). Having found all of the procedural prerequisites met (Tr. 1-4), the Court has

properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The

Appeals Council's decision, or the decision of the administrative law judge if the request for

review is denied, is binding unless you… file an action in Federal district court…"). For the

reasons given below, the Court **RECOMMENDS** that the decision of the Commissioner be

**AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

## I.     PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits and supplemental security

income on September 30, 2013 alleging that he became disabled on March 7, 2010 because of a

disabling condition, namely degenerative disc disease of the lumbar spine, avascular necrosis of

the right hip, and major depressive disorder, HIV, removal of half of a lung, light stroke,

breathing problems, dislocated disk[sic], and heart. (Tr. 11, 159). Plaintiff's application was

eventually denied by an Administrative Law Judge ("ALJ"), who first held an administrative hearing (Tr. 25-56) before issuing an unfavorable decision on January 15, 2015. (Tr. 9-21). Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on August 28, 2016. (Tr. 1-5). The ALJ's decision rested as the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981.

## II.     STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The Court may not reweigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g., Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is

less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("In applying the substantial evidence standard, we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's."); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If, on the other hand, the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III.    ALJ'S DETERMINATION

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities…" 20 C.F.R. § 404.1520(c). At step three, the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments). Fourth, the

claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work.  20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work.  20 C.F.R § 404.1520(g)(1).  If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ made the following determinations:

1.      Plaintiff had met the insured status requirements of the Social Security Act through December 31, 2014.

2.      Plaintiff had not engaged in substantial gainful activity since March 7, 2010.

3.      Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine, avascular necrosis of the right hip, and major depressive disorder.

4.      Plaintiff did not meet or medically equal any listed impairment.

5.      Plaintiff retained the residual functional capacity (RFC) to perform sedentary work, except he must stand for a short period of time after sitting thirty minutes, and he is limited to simple, routine, repetitive tasks.

6.      Plaintiff was unable to perform any past relevant work.

7.      Plaintiff was born on August 10, 1965 and was 44 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. Plaintiff subsequently changed age category to a younger individual age 45-49.

8.      Plaintiff has a limited education and is able to communicate in English.

9.      Plaintiff was not disabled.

10.     There are jobs that exist in significant numbers in the national economy that Plaintiff can perform considering his age, education, work experience, and RFC.

# IV. DISCUSSION

Plaintiff makes the following four arguments: (1) the ALJ's assessment of Plaintiff's mental RFC was not based upon substantial evidence; (2) the ALJ's RFC failed to account for the Plaintiff's GAF score; (3) the ALJ's finding that Plaintiff can perform sedentary work in light of using a cane is not supported by substantial evidence; and (4) the ALJ erred in the weight given to the medical opinion of Dr. Donnell Ashford regarding Plaintiff's mental RFC.

## A. ALJ's RFC and Mental Limitations

Plaintiff argues that the ALJ's RFC finding is in error because the ALJ failed to account for Plaintiff's purported limitations in concentration, persistence, or pace in concluding that Plaintiff could perform simple, routine, repetitive tasks. (R. Doc. 8 at 5-7). The Commissioner responds that, while the ALJ found at Step 3 that Plaintiff had moderate difficulties in maintaining concentration, persistence, and pace, Plaintiff had failed to show that the Step 4 finding as to Plaintiff's RFC was erroneous because the two analyses are not corollary. (R. Doc. 10 at 5-7). The Court finds the Commissioner's argument persuasive on this point.

On the psychiatric review technique, SSR 96-8p, 1996 WL 374184, at *4, 6 (July 2, 1996), states:

> The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

***

Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.

The ALJ engaged in significant analysis of Plaintiff's mental RFC. (Tr. 17-19). The ALJ reviewed the findings of five mental health professionals that assessed Plaintiff, namely, Lula Richardson (Tr. 17, 558-562), Dr. Ashford (Tr. 18, 323-329), Dr. Van Hook (Tr. 18, 298-300), Dr. Durdin (Tr. 18-19, 312-316, 330-333), and Dr. Barnett (Tr. 19, 49-65). The ALJ's review of these opinions summarizes those findings within the realm of the factors required to be considered. For example, as to Dr. Ashford, the ALJ memorializes that Dr. Ashford found Plaintiff "would be able to understand, remember and carry out simple instructions." (Tr. 18); Plaintiff "would have difficulty responding appropriately to supervision and interacting appropriately with co-workers due to poor impulse control, poor judgment, and relational problems" (Tr. 18); and "would have difficultly sustaining effort and persisting at a normal pace over the course of a routine forty-hour workweek and tolerating the stress and pressure associate with day-to-day work activities and demands" (Tr. 18). As to Dr. Van Hook's opinion, the ALJ noted that he found Plaintiff's "presentation would suggest a questionable ability to respond appropriately to supervision and interact with others and an impaired ability to maintain attention and concentration to perform simple, repetitive tasks," but that Plaintiff "appeared to be magnifying his symptoms and giving suboptimal effort." (Tr. 18).

In addition to the work-related findings of the professionals who performed mental health evaluations, the ALJ also factored into his consideration various reports of exaggeration of symptoms by the Plaintiff, malingering, carping, and refusal to cooperate with the testing. More specifically, the ALJ considered that Dr. Van Hook found that Plaintiff appeared to be magnifying his symptoms and giving suboptimal effort and refused to try and gave up easily, that

Dr. Durdin identified malingering as the only diagnosis following both examinations and is able to interact appropriately when he chooses to do so, and that Dr. Barnett found that Plaintiff is not incapable of getting along with others if he is willing to exert the effort to do so. (Tr. 18-19). The ALJ, in discussing these findings, also pointed out some of the bases for these conclusions, including Dr. Durdin's suggestion that Plaintiff "was hostile with her" but "not hostile toward others in the waiting room," and that Dr. Van Hook observed Plaintiff "laughing and smiling with his sister, though he reported his depression to be a '20' on a scale of 1 to 10." (Tr. 18, 298-99, 332).

Overall, three of the four mental health opinions noted malingering, carping, or exaggeration of symptoms, which was factored in to the ALJ's RFC assessment. The ALJ performed a detailed review of the objective medical records regarding Plaintiff's mental health evaluations, including Plaintiff's ability to understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting. The ALJ applied the correct legal standards and there is substantial evidence to support the ALJ's findings.

Furthermore, as other courts in this circuit as well as the Fifth Circuit have found, the ALJ accounted for his Step 3 findings with regard to concentration, persistence, and pace in his RFC assessment limiting Plaintiff to "simple, routine, repetitive tasks." (Tr. 14). In evaluating Plaintiff's mental impairments, the ALJ considered whether the 'paragraph B' criteria were satisfied. (Tr. 12). With regard to concentration, persistence, or pace, the ALJ concluded that Plaintiff had "moderate difficulties." (Tr. 14). In so finding, the ALJ noted that his finding was consistent with the opinion of Dr. Barnett, and that all of the psychological evaluations in the record reflected "difficulty with persistence or malingering." (Tr. 14). The ALJ was "convinced

that the claimant has made an effort to present himself as more disabled than he actually is," but specifically also noted that he was "equally convinced that the claimant does have some difficulties in concentration, persistence or pace." (Tr. 14).

As the ALJ then notes, "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (Tr. 14). The ALJ's decision shows that he considered the limitations of moderate difficulty with regard to concentration, persistence, or pace, and included it in the Plaintiff's RFC by limiting him to "simple, routine, repetitive tasks." The ALJ specifically noted in his RFC analysis that "[i]n addition to his physical impairments, the claimant has a depressive disorder that affects his ability to maintain concentration, persistence or pace." (Tr. 17). Put another way, the ALJ found that *even with* moderate limitations in the ability to maintain concentration, persistence, or pace, Plaintiff was not prevented from performing "simple, routine, repetitive tasks."

Furthermore, the ALJ's question posed to the VE adequately reflects these limitations. The VE identified several jobs in the national economy that a person with the following description could perform: "Assume the claimant is 49 years of age, has the exertional ability to perform sedentary work with the following limitations. He's limited to simple, routine, repetitive tasks. Sitting 30 minutes at a time, after which point he can stand for a short period and return to

a seated position." (Tr. 46).  The ALJ's RFC and resulting hypothetical sufficiently account for his Step 3 findings with regard to concentration, persistence, or pace.[1]

The Court's conclusion herein is also consistent with the Fifth Circuit and other district courts within this Circuit.  In *Bordelon v. Astrue*, 281 Fed. App'x 418, 423 (5th Cir. 2008), the Fifth Circuit held in an unpublished decision that "restrictions to rare public interaction, low stress, and simple, one- to two-step instructions reflect that the ALJ reasonably incorporated Bordelon's moderate concentration, persistence, and pace limitations such that the hypothetical question was proper."[2]  The bulk of district courts in this circuit have followed *Bordelon*[3] and held that an RFC limited to simple work reasonably incorporates a moderate, or in some cases marked, limitation in concentration, persistence, or pace. *See, e.g., Herron v. Colvin*, 2017 WL 2615445, at *8 (W.D. Tex. June 16, 2017) (finding a hypothetical limiting an individual to "simple, routine tasks, SVP 3 level tasks, or lower semi-skilled jobs" adequately reflected the plaintiff's moderate concentration, persistence, and pace limitations); *Fitzpatrick v. Colvin*, 2016 WL 1258477, at *11-12 (N.D. Tex. Mar. 31, 2016) (finding ALJ considered moderate difficulty with regard to concentration, persistence, and pace when her RFC limited the claimant to understanding, remembering, and carrying out "short simple routine instructions in a simple

---

[1] The record also reflects that upon completing his questioning of the VE, the ALJ told Jackson's representative, "Your Witness," to which the representative responded, "No questions, Your Honor." (Tr. 46).  As a result, Jackson's "representative [was] afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical question" such that the hypothetical question was proper for that reason as well.  *Bordelon*, 281 Fed. App'x at 423 n. 7 (citing *Bowling*, 36 F.3d at 436).

[2] The Court is aware that other circuits have disagreed with the Fifth Circuit's position in *Bordelon*, as noted by Plaintiff. *See, e.g., Varga v. Colvin*, 794 F.3d 809 (7th Cir. 2015); *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015); *Stewart v. Astrue*, 561 F.3d 679 (7th Cir. 2014); *Howard v. Massanari*, 255 F.3d 577 (8th Cir. 2001); *Smith v. Halter*, 307 F.3d 377 (6th Cir. 2001); *Newton v. Chater*, 92 F.3d 688 (8th Cir. 2001).  Those circuits are not, however, controlling.

[3] The district court decision in *Cruz v. Colvin*, 2016 WL 8672925, at *3 (S.D. Tex. Dec. 28, 2016), *report and recommendation adopted*, 2017 WL 1274296 (Jan. 27, 2017), follows the opinions of those courts outside of the Fifth Circuit.  It does not, however, mention the *Bordelon* decision or the decisions of the multiple district courts within the Fifth Circuit following that decision.

work environment" and making judgment "on simple routine work instructions"); *Gautro v. Colvin*, 2016 WL 7742826, at * 12 (W.D. La. Sep. 2, 2016) (finding ALJ's hypothetical that included a limitation in one, two, or three-step work "implicitly incorporates" moderate limitation in concentration, persistence, and pace), *report and recommendation adopted*, 2017 WL 104463 (W.D. La. Jan. 10, 2017); *Ledet v. Colvin*, 2016 WL 3079026, at *14-15 (E.D. La. May 3, 2016), *report and recommendation adopted*, 2016 WL 306139 (E.D. La. May 31, 2016); *Urrutia v. Colvin*, 2016 WL 1161794 (N.D. Tex. Mar. 24, 2016) ("If the ALJ considered the moderate restrictions in Urrutia's concentration, persistence, or pace when determining the RFC, and this RFC finding is supported by substantial evidence, it was not necessary for the ALJ to directly include in her hypothetical a limitation on concentration, persistence, or pace."); *Madrid v. Colvin*, 2013 WL 6641305 (N.D. Tex. Dec. 17, 2013); *Cook v. Colvin*, 2015 WL 893053, at *13 (W.D. La. Mar. 2, 2015); *Williams v. Colvin*, 2015 WL 1288348, at *6 (N.D. Tex. Mar. 20, 2015); *Cornejo v. Colvin*, 2013 WL 2539710 (W.D. Tex. June 7, 2013); *Ellis v. Astrue*, 2010 WL 3422872, at *5-6 (N.D. Tex. Jul. 27, 2010); *Adams v. Astrue*, 2008 WL 2812835, at *4 (W.D. La. June 30, 2008).  This body of law is persuasive and, accordingly, the Court declines to overturn the ALJ's decision on this ground.

**B.      Consideration of Plaintiff's GAF score**

Plaintiff next argues that the ALJ's decision failed to account for Plaintiff's Global Assessment of Functioning ("GAF") score. Specifically, Plaintiff notes that the ALJ cited the GAF score of 50 found by Social Worker Lula Richardson in September 2013. (R. Doc. 8 at 8; Tr. 17; Tr. 562). The Commissioner responds that the ALJ provided a detailed discussion of Ms. Richardson's GAF score and why it was rejected, a GAF score is not controlling, and in any case, Ms. Richardson is not a medical source entitled to significant weight. (R. Doc. 10 at 7-9).

The Court again agrees with the Commissioner. To start, Plaintiff is incorrect in his suggestion that the ALJ gave "no justification" for the little weight afforded to Ms. Richardson's GAF assessment. (R. Doc. 8 at 8). First, the ALJ cites the portions of the Social Security Act and Regulations that guided the assessment of the GAF score, including SSR 06-03p and 20 C.F.R. §§ 404.1527 and 416.927, and specifically states that he has "not ignored the Global Assessment of Functioning (GAF) scores in the record." (Tr. 17). Then, before according Ms. Richardson's GAF assessment of 50 little weight, the ALJ states:

> Though GAF scores are opinion evidence, supporting evidence must be found before the scores can be given weight. By itself, a GAF score cannot be sued to raise or lower the assessment of the claimant's functioning for purposes of a disability claim. A GAF rating is only a snapshot opinion about the level of functioning; even when support can be found for this rating, it remains only one opinion to be considered along with all the evidence. Unless the clinician providing the opinion clearly explains the basis for the GAF assessment and the period to which the rating applies, the score itself does not provided a reliable longitudinal picture of the claimant's mental functioning. Thus, the GAF rating must be well supported and consistent with other evidence in the file, or it is entitled to little weight in a Social Security disability or supplemental security income benefits claim.

(Tr. 17). Finally, the ALJ notes that a social worker is not an acceptable medical source and, therefore, not entitled to significant weight, particularly in light of there being no basis stated for the rating. (Tr. 17). Not only did the ALJ set forth ample basis for the standards applied and conclusions drawn with regard to Ms. Richardson's GAF rating, he applied the proper legal standards and there is substantial evidence to support his finding.

To start, "[t]he GAF is a diagnostic tool; a medical opinion as to a claimant's GAF is not automatically reflected in any RFC finding, nor does any particular GAF score necessarily correlate to specific limitations imposed by a claimant's mental impairment(s)." *Bobinger v. Astrue*, 2011 WL 1085265, at *5 (N.D. Tex. Mar. 24, 2011). *See also* 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000) ("The GAF scale, which is described in the DSM-III-R (and the DSM-

IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to the severity requirements in our mental disorders listings."); *Breaux v. Colvin*, 2015 WL 965737, at *5 (M.D. La. Mar. 4, 2015) (citing *White v. Colvin*, 2013 WL 441335, at *9 (S.D. Tex. Aug. 12, 2013) ("[A] GAF score alone is not dispositive of a claimant's ability to work because it is not a longitudinal representation of the claimant's mental impairment. Rather, a GAF score is essentially a 'snapshot' of the mental impairment—it only considers the claimant's functioning 'at the time of the evaluation and the score can greatly fluctuate over time.'").

Furthermore, a social worker such as Ms. Richardson is not entitled to the same deference given to a treating source because a social worker is not an "acceptable medical source" under the social security regulations. *See Thibodeaux v. Astrue*, 324 Fed. App'x 440, 445 (5th Cir. 2009). *See also Whitener v. Colvin*, 2017 WL 650443, at *8 (E.D. La. Jan. 19, 2017) ("Licensed professional counselors, including social workers, are not 'acceptable medical sources,' 20 C.F.R. §§ 404.1513(a), 416.913(a), and '[o]only "acceptable medical sources" can establish the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight.'").

Plaintiff suggests that the ALJ should have given weight to Ms. Richardson's GAF score, which is substantially lower than others, but does not make any attempt to justify why the ALJ should not have correspondingly considered the various other GAF or Karnofsky scores in the medical evidence. Notably, Plaintiff was assessed the following scores on the following dates: 90 on January 13, 2009 (Tr. 274); 80/90 on June 16, 2009 (Tr. 267); 80 on July 9, 2009 (Tr. 261); 80 on August 13, 209 (Tr. 252); 50 on November 15, 2011 (Tr. 328); 80/90 on September 23, 2011 (Tr. 415); 80 on November 4, 2011 (Tr. 413); 80 on December 6, 2011 (Tr. 411); 50 on

September 23, 2013;[4] and 80 on October 3, 2013 (Tr. 369). It becomes immediately apparent that the GAF score that Plaintiff suggests should have been accounted for by the ALJ is an outlier in the grand scheme of the GAF/Karnofsky ratings in the record. Other than the two outlier scores of 50 in November 2011 and September 2013, the remaining eight scores are consistent with the objective medical evidence and the conclusions of the ALJ, all being 80 or 90.

Based on the foregoing, the Court finds substantial evidence to support the ALJ's RFC finding insofar as the ALJ accorded the GAF scores of Ms. Richardson little weight, and the proper legal standards were applied. Plaintiff is not entitled to reversal or remand on this ground.

### C.    Plaintiff's Use of Cane

There is no question that the ALJ did not account for the possibility of the use of a cane in the hypotheticals presented to the VE. Accordingly, the threshold question is whether the ALJ was required to account for the use of a hand-held assistive device in the hypotheticals to the VE. If the answer to that question is no, the analysis ends there. If, on the other hand, the answer to that question is yes, the next question is whether the ALJ's failure to account for the use of a cane in the hypotheticals to the VE was harmless error, or whether such failure warrants remand. The Court finds, for the reasons that follow, there was substantial evidence for the ALJ to dismiss the Plaintiff's use of a cane in his RFC analysis. As the answer to the threshold question is no, the Court necessarily concludes the ALJ did not commit error in not presenting the use of a cane in a hypothetical to the VE.

Plaintiff argues that "the record is replete with documentation of plaintiff's cane use for ambulation" such that Plaintiff was "precluded [from] even sedentary work." (R. Doc. 8 at 11). Plaintiff posits further that the ALJ "offered no reason for his rejection of Dr. Khan's opinion

---

[4] This is the GAF score of Dr. Ashford that Plaintiff suggests should have been given more weight.

regarding the need for cane use," and that "[w]hether sedentary jobs exist in sufficient numbers to accommodate such a restriction should have been posed to the VE." (R. Doc. 8 at 12). The Commissioner counters that, while Plaintiff was prescribed a walking cane in March of 2013, by May of that same year a prison medical form notes "[n]o medical need for cane." (R. Doc. 10 at 10; Tr. 345). The Commissioner further points to several instances in the record memorializing Plaintiff's lack of need for a cane. (R. Doc. 10 at 10; Tr. 298, 313, 326, 331, 335, 522).

In addition to the March 2013 prescription for a cane followed by the May 2013 finding of no need for a cane, a similar cycle appears in the record in December 2012. Specifically, in a December 13, 2012 visit, the examiner "suggest[ed] use [of] cane for ambulation." (Tr. 357, 358). Then, on December 17, 2012, the examiner records "no medical indication or physical finding to support need of cane." (Tr. 357).

The ALJ considered the Plaintiff's use of a cane in his RFC analysis and conclusion. In his decision, the ALJ finds the Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms states that Plaintiff "has stated that he needs a cane and can barely walk, though he has been able to walk briskly in a parking lot while talking on a cell phone." (Tr. 20). Prior to that, also in the RFC analysis, the ALJ reviews the records with regard to the necessity of the Plaintiff's use of a cane. The ALJ notes that Plaintiff "had been advised to use a cane for ambulation," but that "[n]o medical records from LSU confirm this report." (Tr. 15). Further, he notes that "it was determined that there were no medical indications or physical findings to suggest a need for a cane" in December of 2012, but that a Duty Status note signed by a nurse employed permissive language that Plaintiff "may use a cane for ambulation." (Tr. 15, 364). It is also significant to note here that the Duty Status restrictions were to begin March 16,

2013 and end June 13, 2013. (Tr. 364). There is no subsequent evidence of medical necessity for the Plaintiff's use of a cane.

The records are inconsistent insofar as both Plaintiff's need for a cane as well as Plaintiff's actual use of a cane and his ability to ambulate without a cane. To the extent the documentation is inconsistent regarding plaintiff's use of a cane, when the records reviewed by the ALJ are inconsistent, the ALJ is tasked with the duty of using his discretion to determine the proper outcome based on the evidence available in the record. *See, e.g., Thomas v. Astrue*, 277 Fed. App'x 350, 353 (5th Cir. 2008) (citing *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001) ("As a result of these inconsistencies, the ALJ was within his discretion to discount Dr. Riley's records as being internally inconsistent and inconsistent with the overall record."); *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991) (ALJ may disregard claimant's subjective symptomology to the extent it is inconsistent with the record evidence under a proper exercise of the discretion as the finder of fact); *Wilson v. Colvin*, 2014 WL 4230003, at *4 (N.D. Tex. Aug. 25, 2014) ("To the extent Dr. Shamsnia's treatment notes contained medical opinions that were inconsistent with the rest of the medical opinions on the record, the ALJ had discretion to choose among the conclusions of different examining physicians.") (citing sources).

The ALJ correctly notes that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record." (Tr. 15). In *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991), for example, the Fifth Circuit affirmed an ALJ's finding, stating the following:

> It is, of course, improper for an ALJ not to consider a claimant's subjective complaints of pain. It is also improper for an ALJ to make no finding as to a claimant's subjective complaints of pain if, if the claimant were believed, said claimant would be entitled to benefits. *See Scharlow v. Schweiker*, 655 F.2d 645

(5th Cir.1981) (negative determination reversed and remanded because ALJ made no findings as to claimant's subjective complaints of pain). This, however, is not such a case. The ALJ made a finding as to plaintiff's subjective complaints and in fact credited them, but not to the extent that plaintiff wished. "How much pain is disabling is a question for the ALJ since the ALJ has primary responsibility for resolving conflicts in the evidence." *Id.* at 648. We may not reweigh the evidence. *Villa v. Sullivan*, 895 F.2d at 1022 (citations omitted).

That is exactly what the ALJ did here. After reviewing and detailing the objective medical evidence, the ALJ concludes that "[t]he medical evidence does not support the degree of limitation alleged by the claimant." (Tr. 20). The ALJ goes on to state that "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's statements concerning the intensity, persistence and limiting effects of his symptoms are credible to the extent they are consistent with the objective medical evidence and the conclusions stated herein." (Tr. 20).

Substantial evidence supports the ALJ's conclusion for two reasons. First, the objective medical records are not consistent with regard to the need for Plaintiff to use a cane. The use of a cane was suggested or prescribed by medical personnel in only two places, December of 2012 and March of 2013. (Tr. 345, 357, 358). By May 3, 2013, however, the record reflects "no medical need for cane." (Tr. 345). Second, Plaintiff's ability to ambulate with and without a cane is inconsistent based upon observations of various medical providers throughout the record. For example, on June 21, 2013, a nurse writes that Plaintiff "ambulates without difficulty." (Tr. 338). The same is noted on September 3, 2013. (Tr. 335, 362). On July 10, 2014, Dr. Niels J. Linschoten observes that Plaintiff "walks with a slow gait as though he has had a stroke," but does not record any use of a cane. (Tr. 522). Dr. Linschoten's treatment plan recommended "continued pursuit of conservative therapy such as anti-inflammatory medications, protected weightbearing, etc." (Tr. 522).

Given the inconsistencies in the record as to the medical need for a cane as well as the Plaintiff's actual use of a cane, the ALJ was within his discretion to weigh the objective medical records and his conclusion is supported by substantial evidence.

### D.      Weight given to Dr. Ashford

Plaintiff's final argument is that the ALJ erred in either dismissing or not giving "appropriate weight" to the medical opinion of Dr. Donnell Ashford. (R. Doc. 8 at 12-17). Instead, the ALJ gave significant weight to the opinion of Dr. Barnett. (Tr. 13).  In so doing, the ALJ considered the opinions of Dr. Ashford, as well as Drs. Linda Stewart, Sandra Durdin, and Van Hook, which opinions were also before Dr. Barnett.  The record reflects that these opinions are the totality of the opinions of physicians as to Plaintiff's mental health, and none of them are treating physicians.  Dr. Barnett is a state agency psychological examiner who completed a Disability Determination Evaluation.  Drs. Ashford, Stewart, and Durdin were all consultative examiners.  Drs. Ashford, Stewart and Van Hook each evaluated Plaintiff on one occasion, while Dr. Durdin evaluated Plaintiff on two occasions.

A consultative examiner is not entitled to the same weight as a treating physician. *See Robinson v. Astrue*, 271 Fed. App'x 394, 396 (5th Cir. 2008) ("Wong performed a one-time consultative examination of Robinson and therefore is not due special deference as a treating physician."); *Christman v. Comm'r of Soc. Sec. Admin.*, 2014 WL 1018063, at *4 (E.D. Tex. Mar. 13, 2014) ("A one time consultative examination by a physician is not due special deference as that of a treating doctor.").  "It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record." SSR 96-2p, 1996 WL 374188, at *2 (July 2, 2996).

Further, a failure to explicitly address the factors set forth in 20 C.F.R. § 404.1527(c) is not fatal to the ability of a Court to affirm an ALJ's decision. In *Christman*, 2014 WL 1018063 at *3 (citing *Bryant v. Astrue*, 272 Fed. App'x 352, 355 (5th Cir. 2008) (per curiam)), for example, the court states that "even with treating doctors, it is not reversible error for an ALJ not to address the § 404.1527(d) factors directly as long as the ALJ's written opinion satisfies three requirements: (1) it notes the medical opinion; (2) the noted medical opinion does not refute other evidence in the record supporting the ALJ's written opinion; and (3) it reflects that the ALJ considered the relevant factors even if not listed."

The case of *Ciccotti v. Astrue*, 2010 WL 3022775, at *9-10 (W.D. Tex. July 28, 2010), is instructive on this point. There, the plaintiff argued that the ALJ erred in his RFC decision because he failed to conduct a six-factor test to weigh medical opinions. The court declined to reverse on this ground, holding that the ALJ "was not required to conduct a six-factor test to weigh the medical opinions of non-treating doctors because the doctors were not treating doctors." *Ciccotti*, 2010 WL 3022775 at *9. The court went on to analyze whether it was reversible error for the ALJ to not consider the six-factor test, even were the rejected opinion from a treating physician, and similarly dismissed that possibility. In *Ciccotti*, the court found that the ALJ had met the three-factor analysis applied when an ALJ does not explicitly address the six factors in 20 C.F.R. § 404.1527(c), namely (1) the ALJ notes the medical opinion; (2) the noted medical opinion does not refute other evidence in the record supporting the ALJ's written opinion; and (3) it reflects that the ALJ considered the relevant factors even if not listed. *Ciccotti*, 2010 WL 3022775 at *9.

The same is true here such that, even were the ALJ required to employ the six-factor test in giving little weight to Dr. Ashford's opinion, his analysis was sufficient to preclude reversible

error. First, the ALJ not only acknowledges Dr. Ashford's opinion, but addresses it at length in his analyses. At Step 4, the ALJ summarized Dr. Ashford's opinion, including "that the claimant would be able to understand, remember and carry out simple instructions," and "that the claimant would have difficulty sustaining effort and persisting at a normal pace over the course of a routine forty-hour workweek and tolerating the stress and pressure associated with day-to-day work activities and demands." (Tr. 18). Then, "[b]efore assessing the weight to be given the opinion of Dr. Ashford" as noted by the ALJ, he reviewed the reports of Drs. Van Hook, Durdin, and Barnett. (Tr. 18-19). Thus, the ALJ appropriately "noted" the medical opinion of Dr. Ashford.

Like Drs. Van Hook and Durdin, Dr. Ashford issued a Medical Source Statement. "A Medical Source Statement is medical opinion evidence that the ALJ considers together with all of the other relevant evidence when assessing the claimant's RFC." *Renteria v. Colvin*, 2015 WL 5147011, at *6 (W.D. Tex. Aug. 31, 2015) (citing SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996)). Further, a Medical Source Statement "is not the equivalent of an RFC assessment and is not binding on the ALJ who has discretion to accept or reject it, in whole or in part." *Renteria*, 2015 WL 5147011 at *6. "While it is within the ALJ's discretion to reject a medical source opinion, he must nevertheless rely on medical evidence to support his RFC determination—not the other way around." *Gatewood v. Berryhill*, 2017 WL 1737904, at *5 (N.D. Tex. Mar. 14, 2017). The ALJ's decision with regard to Plaintiff's mental RFC does exactly this. The ALJ gives little weight to Dr. Ashford's opinion, and significant weight to Dr. Barnett's opinion because he finds it is well supported by the evidence. Dr. Barnett, after review of the records, including those of Drs. Ashford, Durdin, and Van Hook, "assessed a light functional capacity and mental residual functional capacity for simple work." (Tr. 74). This is supported by Dr.

Ashford's Medical Source Statement, wherein he notes that Plaintiff "seems able to maintain attention to perform at least simple repetitive tasks for two hour blocks of time." (Tr. 328).

As to the second factor, the opinion of Dr. Ashford does not refute other evidence in the record supporting the ALJ's written opinion. While Dr. Ashford may have drawn different conclusions with regard to Plaintiff's ability to work, Dr. Ashford's opinion contains facts and analyses quite similar to that of Drs. Van Hook and Durdin such that it does not refute other evidence in the record supporting the ALJ's written opinion. Plaintiff's mental health functioning was evaluated on four occasions by way of consultative examination because there is no treating source from which to obtain any information regarding Plaintiff's mental health functioning and capacity. First, Plaintiff was evaluated by Dr. Van Hook on November 10, 2010. (Tr. 298-300). As a result of that evaluation, Dr. Van Hook reported the following: "He was adequately nourished, adequate in appearance, and had adequate hygiene at the time of the interview" (Tr. 298); "He needed no assistance from others." (Tr. 298); "He was cooperative but carping throughout." (Tr. 298); "He is able to bathe and dress himself sometimes but 'sometimes I just sit there.'" (Tr. 298); "He presented during this examination in a questionable fashion and was a guarded historian. He reported having grave depression but showed incongruent affect and smiled and was humorous with his sister." (Tr. 298-99); "Motivation was poor. Persistence was impaired – he refused to try some tasks, gave up easily, gave brief responses and was resistant to procedures." (Tr. 299). In his Medical Source Statement, Dr. Van Hook concludes, "[h]e appeared to be a symptom magnifier and he showed many sign[s] of suboptimal effort." (Tr. 299). Further, Dr. Van Hook noted that Plaintiff "is not considered competent to manage disability funds, should he receive them." (Tr. 300).

The second mental capacity evaluation was performed by Dr. Sandra Durdin on February 17, 2011. (Tr. 313-316). Therein, Dr. Durdin notes, in pertinent part, the following observations: "Mr. Jackson walked in a nearby parking lot, smoking, and talking on his cell phone prior to his appointment time. He had a full range of affect. He did not cooperate with testing of cognitive skills." (Tr. 313). Dr. Durdin's results reflected that Plaintiff's "[a]ffect and mood were normal," "[s]peech and language were fully intelligible and his vocabulary was normal for conversation," his "[l]anguage and comprehension were not impaired," but that "[h]is memory and overall cognitive skills could not be properly assessed due to malingering," and he "had a defensive and manipulative manner of relating." (Tr. 314). These findings are consistent with the findings of Dr. Van Hook. In her conclusion, Dr. Durdin states that "[h]is ability to tolerate the stress and pressure associated with day-to-day work activity and demands is not impaired by any evidence of a severe, acute mental disorder." (Tr. 315).

Plaintiff's third mental capacity evaluation was done by Dr. Ashford on November 15, 2011. (Tr. 323-329). After spending several pages recounting information communicated by Plaintiff to Dr. Ashford, he records observations that Plaintiff "was appropriately dressed and appeared reasonably neat, clean and well groomed." (Tr. 326). Further, Dr. Ashford notes that "he was friendly, cooperative, outgoing and talkative." (Tr. 326). In his Medical Source Statement, Dr. Ashford concludes, "Mr. Jackson seems able to understand, remember and carry out simple instructions." (Tr. 328). Despite that finding, Dr. Ashford also concludes," Mr. Jackson would have difficulty responding appropriately to supervision and interacting appropriately with co-workers due to poor impulse control, poor judgment and relational problems." (Tr. 328).

Lastly, Plaintiff's fourth mental capacity evaluation was a second evaluation done by Dr. Durdin on January 18, 2012. (Tr. 331-333). Dr. Durdin noted that Plaintiff was "rude, hostile and uncooperative with testing," but that his "grooming was good, he was dressed in casual clothes, and he looked his stated age." (Tr. 331). Dr. Durdin opined that Plaintiff was "walking slowly when seen by Dr. Ashford," but was "walking rapidly outside today." (Tr. 331). She also observed that Plaintiff "was hostile in his manner of relating" but was "not hostile toward" other people in the waiting room. (Tr. 332). Based on her observations, Dr. Durdin assigned an Axis I finding of "Malingering on Testing," and concludes that Plaintiff did "not have problems understanding simple instructions," and that "[h]is ability to maintain attention to perform simple repetitive tasks for two hour blocks of time is not impaired by any visible evidence of inability to focus," but she deferred conclusions on the remainder of her evaluation "due to lack of cooperation." (Tr. 333).

Dr. Barnett then reviewed these opinions, along with other records, in order to issue his Disability Determination Explanations. (Tr. 49-65; 67-83). Overall, Dr. Ashford's analysis of Plaintiff is substantially similar to the observations of Drs. Van Hook and Durdin, as well as Dr. Barnett's opinion, but he draws slightly different conclusions based on those similar observations. Plaintiff would have the Court give Ashford's suggestion of disability more weight, even though Plaintiff concedes that there is "so much consistency between Dr. Barnett's opinions and those expressed by Dr. Ashford." (R. Doc. 8 at 17). Using this, the ALJ summarizes his Step 3 analysis, stating, "the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (Tr. 14). From there, in the ALJ's Step 4 analysis of Plaintiff's mental RFC, the ALJ

conducts an even more detailed review and analysis of the opinions of Drs. Ashford, Barnett, Durdin, and Van Hook. (Tr. 17-19).

The ALJ then concludes, "[b]ased on the totality of the evidence regarding the claimant's mental impairment, including his refusal to cooperate on examination and his volitional hostility toward Dr. Durdin, the undersigned is not persuaded that the claimant has the degree of limitation assessed by Dr. Ashford. Thus, Dr. Ashford's opinion is given little weight. The undersigned finds the claimant has the mental capacity of [sic] perform simple, routine, repetitive work." (Tr. 19). Regarding the Plaintiff's testimony at the administrative hearing in conjunction with the medical evidence, the ALJ concludes that "[t]he medical evidence does not support the degree of limitation alleged by the claimant." (Tr. 20). Thus, the ALJ's decision meets the standard of the second factor insofar as the opinion of Dr. Ashford does not refute other evidence in the record supporting the ALJ's written opinion. To the contrary, Dr. Ashford's opinion is in line with other evidence in the record; he merely comes to more extreme conclusions with regard to Plaintiff's ability to work. These conclusions are not binding on the ALJ. *See* 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); *Robinson v. Colvin*, 2016 WL 1059528, at *3 (S.D. Tex. Mar. 17, 2016) ("Finally, section 404.1527(d)(1) states that the ALJ is responsible for making the final determination of disability. 20 C.F.R. § 404.1527(d)(1). A statement by a medical source that a person is disabled does not mean that the ALJ will find disability. *Id*. The rules establish that an ALJ has the discretion in weighing the credibility of expert testimony and can consider other factors in the final determination of whether a person is disabled.").

Lastly, regarding the third factor – consideration of relevant factors even if not listed – the ALJ's decision is likewise supported by substantial evidence. As an initial matter, the ALJ states that he "has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." (Tr. 15). The ALJ notes that "the claimant has undergone four consultative psychological evaluations in pursuit of his three applications for disability benefits," which reflects the ALJ's understanding of the examining relationship, the treatment relationship, the length of the treatment relationship and the frequency of examination, and the nature and extent of the treatment relationship. The ALJ details the findings of each of the examinations, which reveals the supportability and consistency of the opinions. Accordingly, it is clear that the ALJ considered the relevant factors, even if they were not explicitly enumerated, such that the ALJ's decision is not reversible on this ground.

In sum, the weight given by the ALJ to Dr. Ashford's opinion, and the corresponding weight given to the opinions of Drs. Barnett, Van Hook, and Durdin, is supported by substantial evidence in the record. Plaintiff's argument on this point necessarily fails. The ALJ's finding that Plaintiff is has the mental capacity to perform "simple, routine, repetitive work" is supported by substantial evidence in the record, including Dr. Ashford and Dr. Barnett's opinions. Where Dr. Durdin concluded that Plaintiff "is not impaired by any evidence of a severe, acute mental disorder," the ALJ found that he was. (Tr. 315). Notably, the ALJ's mental RFC is actually more in line with Dr. Ashford and Dr. Barnett's opinions. Dr. Ashford concluded that Plaintiff "seems able to understand, remember and carry out simple instructions." (Tr. 328). Dr. Barnett similarly concluded Plaintiff had the "mental residual functional capacity for simple work." (Tr. 56). Therefore, to the extent the Plaintiff argues the ALJ erred in the weight given to Dr. Ashford's opinion, that argument is without merit as the ALJ's decision is replete with evidence that all of

the medical opinions were considered and there is substantial evidence to support the ALJ's conclusion.

**V.      CONCLUSION**

For the reasons given above, the Court **RECOMMENDS** that the Commissioner's decision be **AFFIRMED** and that Plaintiff's appeal be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on August 2, 2017.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**